**Parker Schwartz, PLLC**
Ira M. Schwartz, (SBN 010448)
7310 N. 16th Street, Suite 330
Phoenix, Arizona 85020
*Telephone*: (602) 282-0477
*Facsimile*: (602) 282-0478
ischwartz@psazlaw.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JDA Software, Inc.<br><br>Plaintiff,<br><br>vs.<br><br>Sabert Holding Corp.<br><br>Defendant. | Case No.: 2:17-CV-00373-PHX-HRH<br><br>**MOTION TO DISMISS OR STAY ACTION PENDING RESOLUTION OF PENDING ARBITRATION** |

Defendant Sabert Holding Corp. moves the Court for an order dismissing or staying this case because the case is subject to resolution by arbitration. This motion is supported by the Memorandum of Points and Authorities attached below.

///

///

///

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

DATED this 8th day of March, 2017.

PARKER SCHWARTZ, PLLC

By *s/Ira M. Schwartz*
Ira M. Schwartz
7310 North 16th Street Suite 330
Phoenix, Arizona 85020
*Attorneys for Defendant Sabert Holding Corp.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### Background

In 2012, JDA Software, Inc. licensed certain of its software to Sabert pursuant to a written agreement (the "License Agreement"). Complaint at ¶11. The License Agreement contains the following arbitration provision:

> **Arbitration**. Except[] at the option of JDA with respect to a claim against Customer for the nonpayment by Customer of amounts owing to JDA or at the option of either party with respect to the right to apply to a court of competent jurisdiction for equitable or injunctive relief, any controversy or claim arising out of or related to this Agreement or in connection with a breach of this Agreement ("Claim") will be settled by arbitration before a single arbitrator under the commercial arbitration rules of the American Arbitration Association in effect at the time such Claim is submitted to arbitration. The arbitrator will be a person having experience with and knowledge of the computer software business. The arbitrator will not have any authority to make any ruling, finding or award that does not conform to this Agreement. The arbitral award will be final and binding on all parties and may be entered as a judgment and enforceable by any court of competent jurisdiction.

Complaint, ¶30.

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

The License Agreement allowed a certain number of so-called "Power End Users" and "Casual End Users" to use the software modules provided by JDA. Whether a particular Sabert end user was a "Power End User" or a "Casual End User" depends on the degree of use the end user makes of the system. A "Power End User" is "a named end user who may call up, view, update, delete and run processes . . . view, schedule, sort, filter and receive reports generated by the Software . . . build report definitions and templates and publish those reports to other licensed End Users." A "Casual End User" is a "named end user who may call up, view, update and edit data, but may not create or delete data [and] view, schedule, sort, filter and receive reports generated by the Software."

In exchange for the software licenses, Sabert agreed to pay, and did pay, a one-time licensing fee at the beginning of the license period. JDA also agreed to provide maintenance for the software, in exchange for which Sabert agreed to pay, and has paid, a set fee each year. There is no dispute that Sabert paid the licensing fee and all maintenance fees. See Exhibit 1, Freeman Decl. at ¶3.

Instead the parties' current dispute arises from an audit conducted by JDA in June 2016 to determine whether Sabert was in compliance with its licenses for the JDA software. After conducting the audit, JDA claimed that Sabert had exceeded the scope of its licenses by having more Power End Users than its license allowed and demanded payment of $457,002 (amounting to more than 150% of the original license fee). Complaint, ¶¶ 17-20.

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

But JDA's audit contained many errors. For instance, JDA's audit counted as "Power End Users" several consultants who were granted temporary, short-term access to the modules for the purpose of updating one of the software modules. The audit also counted Sabert's system administrator as a "Power End User." It is well understood in the software industry that the term "end user" includes only those users for whom the particular software module was designed and it does not include individuals who design or maintain the system. Thus, neither the consultants nor Sabert's system administrator should have been considered "Power End Users." JDA's audit also erred insofar as it counted as "Power End Users" certain individuals who in fact used the software as "Casual End Users." Exhibit 1, Freeman Decl. at ¶5.

Because of these errors, Sabert advised JDA that it disagreed with the audit. *Ibid*. After weeks of failed efforts to resolve the disagreement with JDA, in an effort to avoid unnecessary litigation and to show that Sabert is and was always willing to pay whatever amounts are validly due and owing to JDA, Sabert paid an additional $45,424 to JDA, an amount that Sabert determined was the most that could be due owing to JDA after giving JDA the benefit of every doubt concerning the audit findings. Sabert accepted the payment. Exhibit 1, Freeman Decl. at ¶9.

On November 18, 2016, to get leverage over Sabert in its negotiations relating to the audit, JDA delivered to Sabert a letter purporting to terminate the License Agreement pursuant to a provision in the License Agreement which permits either party to terminate

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

the agreement if the counterparty materially breaches it. In particular, JDA contended that Sabert's failure to pay the disputed amount in JDA's audit report was a material breach of the License Agreement. Sabert responded that a failure to pay a disputed amount cannot amount to a material breach of the License Agreement and that JDA therefore was not authorized to terminate the it. Sabert asked JDA to rescind its termination notice, but JDA refused to do so. Exhibit 1, Freeman Decl. ¶¶7-8.

**The Pending Arbitration**

Given the uncertainty created by JDA's purported termination of the License Agreement, on January 9, 2017, Sabert filed a Demand for Arbitration with the American Arbitration Association pursuant to Paragraph 9.2 of the License Agreement to resolve the uncertainty concerning the status of the License Agreement and also whether Sabert owed any money to JDA as a result of JDA's audit. Sabert's Demand sought the following declarations (in addition to attorneys' fees and costs):

(a) "that JDA's November 18, 2016 termination letter was void *ab initio*";

(b) "that all of Sabert's rights under the License Agreement continue unabated";

(c) "that Sabert may continue to use all software identified in the License Agreement in accordance with the terms and conditions of the License Agreement"; and

(d) "that no sums of money are currently due and owing from Sabert to JDA under the License Agreement."

Exhibit 2, Declaration of Christopher Walsh at Exhibit 2-A, p.8

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

On February 6, 2017—the same day that JDA filed the Complaint in this action—it sent a letter to the AAA contending that Sabert's claims for declaratory relief arose out of Sabert's failure to pay the amounts demanded by JDA after the audit, "invoking its right under Section 9.2 to litigate" the claims asserted in the Demand for Arbitration, and asking the AAA to "dismiss the arbitration." Exhibit 2-B. After receiving additional legal argument from Sabert and JDA on the arbitrability of the matters in dispute, on February 9, 2017, the arbitrator issued a decision which provided in pertinent part:

1. "I have authority to determine the arbitrability of the claims pending in the arbitration";
2. "The claims submitted in this arbitration are arbitrable"; and
3. "The AAA has jurisdiction over the claims presented and authority to proceed with this arbitration."

Exhibit 2, Walsh Decl. at Exhibit 2-C

On February 16, 2017, the arbitrator and the parties conducted an initial conference during which they set a hearing for August 14-17, 2017. Exhibit 2-D. In the event the arbitrator decides that amounts are in fact due from Sabert to JDA, Sabert remains ready, willing, and able to pay such amounts to JDA. Exhibit 1, Freeman Decl. ¶10.

**This Litigation**

This litigation is essentially a mirror image of the arbitration. In it JDA seeks contract damages for Sabert's allegedly having exceeded the licenses it was granted by JDA. It also seeks copyright damages for Sabert's alleged continued use of JDA's software after it purportedly terminated the License Agreement.

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

**ARGUMENT**

**I.**

**The Parties Agreed That an Arbitrator Must Decide Arbitrability; Therefore This Matter Should Be Dismissed or Stayed Until an Arbitrator Determines that the Matters Alleged in the Complaint Are Not Arbitrable.**

Arbitrability should be decided by a court "[u]nless the parties clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Here the parties "clearly and unmistakably" agreed to have arbitrability decided by the arbitrator by incorporating the AAA's commercial arbitration rules into their arbitration agreement. Complaint, ¶ 30 ("any controversy or claim arising out of or related to this Agreement or in connection with a breach of the Agreement ("Claim") will be settled by arbitration . . . *under the commercial arbitration rules of the American Arbitration Association in effect at the time such claim is submitted to arbitration*") (emphasis supplied).

Rule R-7 of the AAA's commercial arbitration rules currently provides (and so provided when Sabert filed its Demand for Arbitration) that questions of arbitrability and the arbitrator's jurisdiction are to be resolved by the arbitrator: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

Consequently, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). The Ninth Circuit is no exception, holding "that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Brake Masters Sys., Inc. v. Gabbay*, 206 Ariz. 360, 367 (Ct. App. 2003) ("By incorporating the AAA rules into the agreement, Brake Masters and Gabbay clearly and unmistakably agreed that the arbitrator would primarily decide the arbitrability of the issues").

Based on the foregoing Sabert and JDA "clearly and unmistakably" agreed to arbitrate arbitrability. Thus, as the parties' arbitrator has already determined, whether the claims asserted in the Complaint must be arbitrated should be decided by an arbitrator (not a court), and this action should be dismissed or stayed until JDA obtains a finding from the arbitrator that the matters alleged in the Complaint are not arbitrable. *See Brennan*, 796 F.3d at 1134 (affirming dismissal of complaint after finding that parties had agreed to arbitrate arbitrability).

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

## II.

## The Matters Alleged in the Complaint Must Be Arbitrated

In the event the Court determines that it, and not an arbitrator, should decide arbitrability, the Court should conclude that the matters alleged in the Complaint must be arbitrated.

The Federal Arbitration Act[1] implements a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Consequently all doubts about whether a dispute must be arbitrated should be resolved in favor of arbitration. *Id*. at 24-25. And, while state law principles of contract construction apply to the construction of arbitration provisions, any ambiguities in an arbitration provision must be resolved in favor of arbitration. *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 476 (1989); *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1018 (9th Cir. 2016).

Moreover, the party resisting arbitration, here JDA, bears the burden of showing that the claims are not arbitrable. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000). That burden is considerable. To meet it the party resisting arbitration must provide "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*, 475 U.S. at 650 (internal quotations omitted); *see also Comedy Club, Inc. v. Improv West Assocs.*, 514 F.3d 833, 842 (9th Cir. 2008) (same).

---

[1] The License Agreement involves parties from different states and therefore constitutes interstate commerce. Complaint at ¶¶ 1-2. The parties' arbitration agreement is therefore governed by the Federal Arbitration Act. 9 U.S.C. §2.

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

The arbitration provision in the License Agreement states in pertinent part:

> **Arbitration.** Except, *at the option of JDA with respect to a claim against Customer for the nonpayment by Customer of amounts owing to JDA* or at the option of either party with respect to the right to apply to a court of competent jurisdiction for equitable or injunctive relief, any controversy or claim arising out of or related to this Agreement or in connection with a breach of this Agreement ("Claim") will be settled by arbitration. . . (emphasis supplied).

Complaint, ¶ 30.

JDA contends that the italicized language grants it the right to choose to litigate the claims in the Complaint because they are claims "against [Sabert] for the nonpayment by [Sabert] of amounts owing to JDA."

Arizona law[2] requires a tribunal construing a written contract to "interpret the contract so as to make it effective and reasonable." *County of La Paz v. Yakima Compost Co.*, 233 P.3d 1169, 1178 (Ariz. Ct. App. 2010). The only reasonable interpretation of the italicized portion of the arbitration clause is that it permits JDA to avoid arbitration and proceed directly to litigation in order to undertake collection efforts against Sabert for debts *indisputably* due and owing to JDA. The obvious purpose of the exception for "nonpayment" claims is to streamline JDA's collection efforts if it becomes necessary to use the judicial system to compel Sabert to pay its undisputed debts to JDA. Without the exception, if Sabert were to stop paying its undisputed debts to JDA and JDA was required to use judicial coercion to compel payment, JDA would have to: 1) commence an

[2] The License Agreement contains an Arizona choice-of-law clause.

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

arbitration, 2) obtain a default arbitral award, 3) confirm the award in a court of competent jurisdiction, and 4) seek to execute on the confirmed award. The exception for nonpayment, however, permits JDA to skip the first two steps when seeking to collect an undisputed debt and proceed directly to a court to obtain an executable judgment.

The parties' current dispute is not a simple matter of collecting an undisputed debt. To be sure, Sabert has paid the original licensing fee and all maintenance obligations. It has even paid a portion of the disputed amount. And it remains ready, willing, and able to pay any amounts that it may be found to owe to JDA during the arbitration. Instead, the current controversy arises from the parties' dispute over the accuracy and reliability of JDA's audit and JDA's effort to terminate the licensing agreement because Sabert didn't acquiesce to the results of JDA's flawed audit report. As the parties' arbitrator has already determined, resolving those issues does not necessarily require finding that there was a "nonpayment by Customer of amounts owing to JDA." Exhibit 2, Walsh Decl. at Exhibit 2-C, p. 3-4.

According to JDA's preferred construction of the arbitration provision, any dispute which could give rise to an obligation by Sabert to pay money to JDA constitutes a claim for the "nonpayment . . . of amounts owing to JDA" and is thus not arbitrable if JDA chooses to litigate the dispute. But that is simply to say that the provision gives JDA the right to litigate, rather than arbitrate, any claims for *legal* relief against Sabert. If that is

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

what JDA meant when they drafted the arbitration provision,[3] it could and should have said so in those words. The provision already contains an exception for claims seeking "equitable" relief. It would have been a simple matter to say also that JDA had the right to exempt from the arbitration provision claims for "legal" relief. Instead, JDA used a much more exacting phrase—"a claim against Customer for the nonpayment by Customer of amounts owing to JDA"—which must be given a commensurately more exacting interpretation, one limited to JDA's collection efforts for Sabert's undisputed debts.

JDA's proposed interpretation should also be rejected because it would lead to the patently unreasonable result that JDA did not commit to arbitrate any claims at all. As mentioned, the provision contains an unambiguous mutual carve-out for claims for *equitable* relief. If the provision is understood to also give JDA a unilateral right to exempt claims for *legal* relief from arbitration, then JDA would not have to arbitrate *any* claims. But that is a patently unreasonable interpretation of a provision which clearly reflects an intention to require both parties to arbitrate at least some of their claims against the other party. And, again, if JDA's intention in drafting the arbitration provision was to have only Sabert required to submit to arbitration, it could and should have made that clear.

JDA also contends that its claim for copyright infringement is not arbitrable because the claim "does not arise from the [License] Agreement." Complaint at ¶32. This is also wrong. The parties' agreement requires arbitration not only of claims "arising out of" the

[3] Because JDA drafted the agreement, any ambiguities should be construed against it. *Skydive Arizona Inc. v. Hogue*, 360 P.3d 153, 163 (Ariz. Ct. App. 2015).

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

License Agreement, but also claims that are "related to" the License Agreement. JDA's copyright claim is at least "related to" the License Agreement and therefore must be arbitrated.

As alleged in the Complaint, the copyright claim is based on two contentions: 1) that "Sabert's use of JDA's Software exceeded the number of users licensed under the [License] Agreement" and 2) that "Sabert has continued to use JDA's Software even after termination of the Agreement." Both contentions require the construction and application of provisions in the License Agreement and thus "aris[e] out of" or at least "relate to" the License Agreement.

The first contention requires determining who is an "end user" under the terms of the Licensing Agreement, specifically whether consultants and system administrators are end users who require licenses. This is essentially the same issue that the arbitrator has already determined to be arbitrable. The second contention requires determining whether the License Agreement was validly terminated, which in turn requires a finding that Sabert materially breached the License Agreement by objecting to the audit. Like the first contention, the second contention also raises an issue—the validity of JDA's purported termination of the License Agreement—which the arbitrator has already deemed arbitrable.

Based on the foregoing, the only reasonable construction of the Licensing Agreement's arbitration provision is that the claims alleged in the Complaint must be arbitrated. But, even if JDA's proposed interpretation were considered reasonable, that

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

would only show that the arbitration provision is ambiguous and subject to two conflicting interpretations. As discussed above, when that is the case, the interpretation favoring arbitration must be selected.

**III.**

**In the Event the Claims Alleged in the Complaint Are Not Deemed To Be Arbitrable, the Court Should Stay This Action Until the Pending Arbitration Is Resolved.**

Even if the Court determines that the claims alleged in the Complaint are not arbitrable, prudent case management requires staying this action until a decision is reached in the arbitration.

The Court enjoys the discretion to stay this action to serve the "interest of justice and in light of the particular circumstances of the case." *Elgamal v. Johnson*, Civ. Act. Nos. 13-867, 14-040, 2014 WL 345632 at *4 (D. Ariz. Jan. 30, 2014). When considering whether to stay a matter, the Court should consider the following:

> (1) The interests of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.
>
> *Keating v. Office of Thrift Supervision*, 45 F. 3d 322, 325 (9th Cir. 1995)

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

This matter should be stayed until a resolution of the pending arbitration, because the arbitration will resolve many, and likely all, of the parties' disputes, leaving little or nothing for this Court to adjudicate. If the arbitrator declares that Sabert does not owe money to JDA on account of the audit, then this case will be rendered entirely moot. Count I, alleging that Sabert breached the License Agreement by not making payments due under the audit, would clearly be moot because there would be a binding finding from the arbitrator that no amounts were in fact due under the audit. Count II, alleging copyright infringement, would also be rendered moot because that claim is based on the contention that JDA was authorized to terminate the License Agreement because Sabert materially breached the License Agreement by not paying what was due pursuant to the audit. If nothing was in fact due under the audit, then JDA was not authorized to terminate the License Agreement and its attempt to do so was a nullity.

Even if the arbitrator finds that Sabert owes money pursuant to the audit, Count I would still be rendered moot because, as it has made clear multiple times, Sabert will pay to JDA whatever amounts are ultimately deemed to be owing to JDA. That would leave only JDA's Count II for copyright infringement, but that Count could also be rendered moot by the second declaration sought by Sabert in the arbitration: that JDA's attempted termination of the License Agreement was invalid and that the License Agreement continues unabated. If that declaration is granted, JDA's claim for copyright infringement would necessarily fail because, as mentioned, that claim hinges fundamentally on the

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

validity of JDA's attempted termination of the License Agreement: if there was no valid termination, there can be no copyright infringement.

Consideration of the five *Keating* factors supports a stay here. The first factor—JDA's interest in proceeding expeditiously with this litigation—would, perhaps counterintuitively, be served by staying this litigation. The arbitration hearing is scheduled for August of this year and a decision is expected by mid-September, a little more than six months away. Exhibit 2-D. As discussed, the arbitration will resolve many, if not all, of the issues in dispute. In the event that any issues remain to be litigated, the Court and the parties can focus their efforts on those limited issues and thus bring the matter to closure that much quicker. Given the typical pace of litigation, it is extremely doubtful that as much could be accomplished in this court proceeding by mid-September. Thus, JDA's interest in an expeditious resolution would be served by a stay, and the first Keating factor therefore supports a stay.

The second *Keating* factor—the burden on Sabert of allowing this matter to proceed—also supports a stay. Without a stay, Sabert will be required to file an answer, make initial disclosures, attend an initial case management conference, and engage in preliminary discovery while the arbitration is also proceeding. But all those efforts in support of this proceeding will likely be for naught because a decision in the arbitration will moot or substantially narrow this matter. It is better that Sabert and JDA avoid the burden of litigating this matter until a decision is rendered in the arbitration.

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

The third *Keating* factor—the Court's convenience and the efficient use of judicial resources—also weighs in favor of grating a stay. By staying the matter, the Court could avoid conducting case management conferences and resolving discovery disputes that might arise between the parties if they are required to litigate this matter. In addition, if the arbitral award does not fully resolve this litigation, for reasons discussed, the issues in dispute will be narrowed considerably, thus reducing the burden this matter is likely to place on this Court's resources.

The fourth and fifth Keating factors—interests of nonparties and the public interest—are not applicable to this matter, which is a purely private dispute.

The *Keating* factors weigh decidedly in favor of granting a stay. This matter should therefore be stayed until a final award has been issued in the pending arbitration.

**CONCLUSION**

For the foregoing reasons, Sabert Holding Corp. respectfully requests that the Court dismiss or stay this matter.

DATED this 8th day of March, 2017.

**PARKER SCHWARTZ, PLLC**

By *s/Ira M. Schwartz*
Ira M. Schwartz
7310 North 16th Street Suite 330
Phoenix, Arizona 85020
*Attorneys for Defendant Sabert Holding Corp.*

PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020

**Certificate of Service**

I certify that on March 8, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to those attorneys registered with CM/ECF:

Jonathan G. Brinson
Polsinelli PC
One E. Washington St., STE 1200
Phoenix AZ 85004
jbrinson@polsinelli.com
*Attorneys for Plaintiff*

*s/Ira M. Schwartz*