IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JDA SOFTWARE, INC., )
)
)
                Plaintiff, )
)
vs. )
)
SABERT HOLDING CORP., )
) No. 2:17-cv-0373-HRH
                Defendant. )
_____)

O R D E R

Motion to Dismiss or Stay

Defendant moves to dismiss or stay this case pending arbitration.[1] This motion is opposed, and plaintiff moves to stay the pending arbitration.[2] Oral argument was requested but is not deemed necessary.

Background

Plaintiff is JDA Software, Inc. Defendant is Sabert Holding Corp.

---

[1]Docket No. 9.

[2]Docket No. 13.

Plaintiff alleges that on June 29, 2012, the parties "entered into a Customer Agreement[3] ... wherein [plaintiff] licensed its software" to defendant.[4] Plaintiff "agreed to provide licenses for: 2 Power End Users for its JDA Demand Classification Software, and 2 Power End Users for its JDA Master Planning Software."[5] On June 29, 2012, the parties also "entered into a maintenance agreement wherein" plaintiff "would provide maintenance services for" its software.[6] Defendant paid $211,000 for the licenses to use plaintiff's software.[7]

Plaintiff alleges that "[p]ursuant to paragraph 2.8 of the [Customer] Agreement," it "was permitted to conduct regular audits to verify that [defendant's] use of the Software was within the scope permitted by the Agreement."[8] Plaintiff alleges that it conducted such an audit on May 14, 2016 and discovered that defendant "had exceeded its licenses in violation of the Agreement."[9] Plaintiff alleges that defendant had "11 additional Power End Users and 1 additional Casual End User" of the JDA Demand and Demand Classification Software and

---

[3]Defendant refers to the Customer Agreement as the "License Agreement."

[4]Complaint at 2, ¶ 11, Docket No. 1.

[5]Id. at ¶ 13.

[6]Id. at ¶ 12.

[7]Schedule 1-A, Exhibit A, Plaintiff's Response to Defendant's Motion to Dismiss and Motion to Stay Arbitration, Docket No.13.

[8]Complaint at 2-3, ¶ 14, Docket No. 13.

[9]Id. at 3, ¶¶ 15-16.

"12 additional Power End Users" of the JDA Master Planning Software.[10] Defendant's Vice-President of Information Technology, Michael Freeman, avers that defendant disagreed with plaintiff's audit results primarily because "JDA considered consultants retained to upgrade the software and [defendant's] system administrator to be 'end users'...."[11]

Plaintiff alleges that on September 19, 2016, it "sent notice to [defendant] of its material breach of the Agreement, with a payment request in the amount of $457,002.00," which included the cost of the additional unlicensed users and "back maintenance fees for the additional unsanctioned licenses."[12] Plaintiff alleges that defendant failed to cure its breach of the Customer Agreement and thus on November 18, 2016, plaintiff "inform[ed] defendant] that the Agreement was terminated...."[13] Plaintiff further alleges that after it "properly terminated the Agreement, [defendant] continued to use [plaintiff's] software in violation of [plaintiff's] copyrights."[14]

Freeman avers that defendant responded to plaintiff's termination letter, "advising JDA that it did not have the right to terminate the License Agreement because [defendant's] good faith disagreement with the audit report was not a material breach of the License

---

[10]Id. at ¶¶ 17-18.

[11]Declaration of Michael Freeman [etc.] at 2, ¶ 5, Exhibit 1, Motion to Dismiss or Stay Action Pending Resolution of Pending Arbitration, Docket No. 9.

[12]Complaint at 3 at ¶¶ 19-20, Docket No. 1.

[13]Id. at ¶¶ 21-22.

[14]Id. at 4, ¶ 27.

Agreement...."[15] Freeman avers that defendant requested that plaintiff revoke the termination but that plaintiff refused to do so.[16]

Freeman avers that on "December 30, 2016, to show that it is willing to pay any amounts it may ultimately be found to owe JDA, [defendant] wired to JDA the sum of $45,424, an amount representing the most that [defendant] could owe to JDA if JDA were given the benefit of every reasonable doubt."[17] Freeman avers that this "amount was received by JDA and never returned."[18]

On January 9, 2017, defendant "filed a demand for arbitration with the American Arbitration Association."[19] The parties' Customer Agreement contains the following arbitration agreement:

> Except at the option of JDA with respect to a claim against Customer for the nonpayment by Customer of amounts owing to JDA or at the option of either party with respect to the right to apply to a court of competent jurisdiction for equitable or injunctive relief, any controversy or claim arising out of or related to this Agreement or in connection with a breach of this Agreement ("Claim") will be settled by arbitration before a single arbitrator under the commercial arbitration rules of the American Arbitration Association in effect at the time such

---

[15]Freeman Declaration at 3, ¶ 8, Exhibit 1, Motion to Dismiss or Stay Action Pending Resolution of Pending Arbitration, Docket No. 9.

[16]Id.

[17]Id. at ¶ 9.

[18]Id.

[19]Complaint at 4, ¶ 28, Docket No. 1.

> Claim is submitted to arbitration. The arbitrator will be a person having experience with and knowledge of the computer software business. The arbitrator will not have any authority to make any ruling, finding or award that does not conform to this Agreement. The arbitral award will be final and binding on all parties and may be entered as a judgment and enforceable by any court of competent jurisdiction.[20]

Defendant's demand for arbitration contains two counts: 1) a claim for declaratory relief that the License Agreement remains in full force and effect and 2) a claim for declaratory relief that defendant owes no further payments to plaintiff.[21] More specifically, defendant seeks declarations that the November 18, 2016 termination letter was void ab initio, that all of its rights under the License Agreement continue unabated, that it could continue to use all the software identified in the License Agreement, and that it currently owed plaintiff nothing.[22]

On February 3, 2017, plaintiff sent a letter asking that the arbitration be dismissed.[23] Plaintiff stated that "the current claim arises out of [defendant's] failure to pay [an] amount

---

[20]Customer Agreement at § 9.2, Exhibit A, Plaintiff's Response to Defendant's Motion to Dismiss and Motion to Stay Arbitration, Docket No. 13.

[21]Sabert Holding Corp.'s Demand for Arbitration at 6-7, Exhibit A, Declaration of Christopher Walsh [etc.], Exhibit 2, Motion to Dismiss or Stay Action Pending Resolution of Pending Arbitration, Docket No. 9.

[22]Id. at 8.

[23]Exhibit B, Walsh Declaration, Exhibit 2, Motion to Dismiss or Stay Action Pending Resolution of Pending Arbitration, Docket No. 9.

owed related to [defendant's] overuse of JDA's software. JDA is invoking its right under Section 9.2 to litigate [the] nonpayment of amounts claim[ed]."[24]

On February 6, 2017, plaintiff commenced this action in which it asserts a breach of contract claim and a copyright infringement claim. Plaintiff seeks damages and injunctive relief.

On February 9, 2017, the arbitrator denied plaintiff's request to dismiss the arbitration.[25] The arbitrator first determined that he had the authority to determine the arbitrability of the claims pending in the arbitration.[26] The arbitrator then considered whether

> this arbitration has jurisdiction over the claims asserted. The Arbitration Agreement allows Respondent JDA Software, Inc., to elect to bring a claim for non-payment either in arbitration or in Court. The Arbitration Agreement also allows either party to bring claims for equitable or injunctive relief in arbitration or in Court. Claimant [Sabert] has elected to bring its claims in arbitration and there are no claims presented by Respondent [JDA]. Therefore, the issue is whether the claims presented by Claimant necessarily require Respondent to submit a claim to arbitration that Respondent prefers to present, if at all, in Court.[27]

The arbitrator found that the "key issue" in the claims presented by defendant was whether defendant had materially breached the Customer Agreement and that the other issue was

---

[24]Id.

[25]Exhibit C, Walsh Declaration, Exhibit 2, Motion to Dismiss or Stay Action Pending Resolution of Pending Arbitration, Docket No. 9.

[26]Id. at 2.

[27]Id. at 2-3.

"whether Sabert could be in material breach of the Customer Agreement when there is a good-faith dispute as to whether Sabert owes additional license fees to JDA, and if so the amount of those fees."[28] The arbitrator concluded that "[n]either of those determinations requires the arbitrator to necessarily find that there is a 'nonpayment by Customer of amounts owing to JDA' that will require JDA to state a claim in arbitration in order to obtain those funds."[29]

Defendant now moves to dismiss or stay this case pending resolution of the arbitration. Plaintiff in turn moves to stay the pending arbitration until this case has been resolved.

Discussion

Since defendant is seeking an order dismissing or staying plaintiff's claims "because the case is subject to resolution by arbitration[,]"[30] the court construes defendant's motion as a motion to compel arbitration pursuant to 9 U.S.C. § 4. "A motion to compel arbitration is decided according to the standard used by district courts in resolving summary judgment motions pursuant to Rule 56, Fed. R. Civ. P." Coup v. Scottsdale Plaza Resort, LLC, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011).

---

[28]Id. at 3.

[29]Id. at 4.

[30]Motion to Dismiss or Stay Action Pending Resolution of Pending Arbitration at 1, Docket No. 9.

In considering a motion to compel arbitration, "[t]he first question for the [c]ourt to address ... is the 'question of arbitrability,' i.e., 'whether the parties are bound by a given arbitration clause.'" The O.N. Equity Sales Co. v. Venrick, 508 F. Supp. 2d 872, 874 (W.D. Wash. 2007) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). The parties disagree as to whether federal or state law applies to the issue of arbitrability. Defendant contends federal law applies. Plaintiff contends state law applies.

Plaintiff argues that state law applies to the question of arbitrability because the Customer Agreement contains an Arizona choice of law provision. Section 9.1 of the Customer Agreement provides that "[t]his Agreement will be governed by the internal laws of the State of Arizona, without reference to its choice of law rules[.]"[31]

The Ninth Circuit has held "that courts should apply federal arbitrability law absent 'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law." Cape Flattery Ltd. v. Titan Maritime, LLC, 647 F.3d 914, 921 (9th Cir. 2011) (quoting First Options of Chicago v. Kaplan, 514 U.S. 938, 944 (1995)). The Customer Agreement contains a choice-of-law clause that provides that Arizona law governs the Customer Agreement, but the Customer Agreement is silent as to whether Arizona law "also applies to determine whether a given dispute is arbitrable in the first place." Id. In short, there is no

---

[31]Customer Agreement at § 9.1, Exhibit A, Plaintiff's Response to Defendant's Motion to Dismiss and Motion to Stay Arbitration, Docket No. 13.

clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law. Thus, federal law applies to the question of arbitrability.

Under federal law, "whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties <u>clearly and unmistakably provide otherwise</u>.'" <u>Oracle America, Inc. v. Myriad Group A.G.</u>, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting <u>Howsam</u>, 537 U.S. at 83). The Ninth Circuit has held "that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." <u>Brennan v. Opus Bank</u>, 796 F.3d 1125, 1130 (9th Cir. 2015).

The arbitration agreement provides, in relevant part, that

> [e]xcept at the option of JDA with respect to a claim against Customer for the nonpayment by Customer of amounts owing to JDA or at the option of either party with respect to the right to apply to a court of competent jurisdiction for equitable or injunctive relief, any controversy or claim arising out of or related to this Agreement or in connection with a breach of this Agreement ("Claim") will be settled by arbitration before a single arbitrator under the commercial arbitration rules of the American Arbitration Association in effect at the time such Claim is submitted to arbitration.[32]

The parties have plainly incorporated the AAA rules into their arbitration agreement. Plaintiff argues, however, that the incorporation of the AAA rules only applies to claims that are subject to arbitration and that the arbitration agreement did not incorporate the AAA rules into the entire arbitration agreement.

---

[32]Customer Agreement, § 9.2, Exhibit A, Plaintiff's Response to Defendant's Motion to Dismiss and Motion to Stay Arbitration, Docket No. 13.

This is a nonsensical argument. Plaintiff is basically arguing that the AAA rule that the arbitrator should decide arbitrability is inapplicable because its claims are not arbitrable. Such an argument assumes the answer to the arbitrability question.

The AAA rules were incorporated into the entire arbitration agreement, which means that the arbitrator must decide whether plaintiff's claims are subject to arbitration, something that plaintiff contends the arbitrator has already done. Plaintiff argues that there is no reason to submit the arbitrability question to the arbitrator again.

Plaintiff contends that when deciding its motion to dismiss defendant's arbitration, the arbitrator decided that plaintiff's claims were not subject to arbitration. This contention is based on the arbitrator's statement that "[t]he Arbitration Agreement allows Respondent JDA Software, Inc., to elect to bring a claim for non-payment either in arbitration or in Court."[33] Plaintiff argues that this shows that the arbitrator has already determined that it may elect not to arbitrate its nonpayment claims.

The arbitrator has not already decided if plaintiff's claims are subject to arbitration. Plaintiff is making too much of the arbitrator's statement. All the arbitrator was doing was paraphrasing the arbitration agreement. The arbitrator could not have possibly decided whether plaintiff's claims were subject to arbitration because those claims were not yet in front of the arbitrator.

---

[33]Order Denying Respondent's Motion to Dismiss for Lack of Arbitral Jurisdiction at 2, Exhibit C, Walsh Declaration, Exhibit 2, Motion to Dismiss or Stay Action Pending Resolution of Pending Arbitration, Docket No. 9.

Because the arbitrator must determine whether plaintiff's claims are subject to arbitration, defendant's instant motion, which the court has construed as a motion to compel arbitration, is granted. Because the court is granting defendant's motion, it must determine whether to stay or dismiss this action. The court "may either stay the action or dismiss it outright [if] the court determines that all of the claims raised in the action are subject to arbitration." Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014). Here, a stay is appropriate because as defendant concedes, plaintiff's copyright claim for injunctive relief is not subject to arbitration.[34]

## Conclusion

Defendant's motion to dismiss this case[35] is denied. Defendant's alternative request[36] to stay this case pending arbitration of plaintiff's claims is granted. This case is stayed pending determination of the arbitrability of plaintiff's claims.

Plaintiff's motion to stay the pending arbitration[37] is denied as moot.

DATED at Anchorage, Alaska, this 19th day of April, 2017.

/s/ H. Russel Holland
United States District Judge

---

[34]Reply Memorandum in Support of Motion to Dismiss or Stay Action Pending Arbitration and in Opposition to Motion to Stay Arbitration at 8, Docket No. 14.

[35]Docket No. 9.

[36]Docket No. 9.

[37]Docket No. 13.